IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF BRUNO BORKOWSKI<br>c/o Alice Toma<br>Administratrix of the Estate of<br>Bruno Borkowski<br>180 Loperwood Lane<br>LaGrange, Ohio 44050<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MEDINA OPERATIONS, LLC<br>dba LIFE CARE CENTER OF<br>MEDINA<br>c/o Medina Operations, LLC<br>3570 Keith Street, NW<br>Cleveland, Tennessee 37312<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:21-cv-1126<br><br>JUDGE:<br><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>(Jury Demand Endorsed Hereon) |

Plaintiff Estate of Bruno Borkowski, by and through undersigned counsel, as its Complaint against Defendant Medina Operations, LLC dba Life Care Center of Medina, states and avers the following:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1367 for Borkowski's claims arising under 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973 ("Section 504")) and 42 U.S.C. § 18116 (Section 1557 of the Patient Protection and Affordable Care Act ("ACA")).

2. Venue is properly in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because (a) the Defendant is located in this judicial district, and (b) a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district.

**PARTIES**

3. Plaintiff Estate of Bruno Borkowski ("Borkowski") is the estate for Bruno Borkowski, a deceased individual who was Deaf and used American Sign Language ("ASL") as his primary method of communication. Borkowski was an "individual with a disability" within the meaning of all applicable statutes and regulations.

4. Defendant Medina Operations, LLC dba Life Care Center of Medina ("Life Care Center"), is a corporation duly organized and existing pursuant to the laws of the state of Ohio, and operates the Life Care Center of Medina in Medina, Ohio. Life Care Center of Medina is a skilled nursing facility which holds itself out to the public, including Plaintiff, as a provider of medical care services.

5. Life Care Center is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and Defendant is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

**FACTUAL ALLEGATIONS**

6. Borkowski incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

7. Borkowski relied on ASL to effectively communicate with others, including when seeking medical care.

8. ASL is a complete, complex language that employs signs made with the hands and other movements, including facial expressions and postures of the body. It is a language distinct

from English – it is not simply English in hand signals – and has its own vocabulary and rules for grammar and discourse structure.

9. Because of the difficulty many Deaf individuals experience reading and writing the English language, passing notes back and forth is not an effective means of communication under the ADA, Section 504, and the ACA.

10. Because Borkowski is Deaf, passing of written notes or being provided written instructions is not effective means of communication.

11. When Borkowski had sought medical treatment from other providers throughout his lifetime, he relied on on-site ASL interpreters in order to communicate with health professionals and make informed medical decisions.

12. On or about April 27, 2020, Borkowski was transferred from University Hospitals to Life Care Center after being treated with heart and lung conditions.

13. At the time of the transfer, Borkowski was under the impression that he would be admitted to Life Care Center for rehabilitation purposes and would be released following a period of recovery.

14. Upon admittance to Life Care Center, Defendant was fully aware that Borkowski was Deaf and would require ASL interpretation services in order to communicate with medical professionals and understand his prognosis.

15. Upon admittance to Life Care Center, Defendant was fully aware that Borkowski was unable to communicate by reading and writing, and it was noted during his admittance that he was unable to "hold and maneuver a pen" due to Parkinson's disease.

16. In addition to the obvious limitations in communications Defendant witnessed in caring for Borkowski, Defendant was also in contact with Borkowski's daughter, Alice Toma, who continually pleaded with Defendant to provide her father with ASL interpretation since she

3

was greatly concerned that he was completely unable to communicate with medical professionals.

17. During his nine days at Life Care Center, Defendant's employees noted on numerous occasions that Borkowski was unable to communicate during important medical examinations, and Borkowski was unable to give input that was vital to his medical care.

18. On or about May 6, 2020, Borkowski passed away while under the care of Defendant.

19. Borkowski was provided no effective communication, whether through on-site qualified ASL interpretation, virtual qualified ASL interpretation, or any other means to foster effective communication for the nine-day admittance at Life Care Center prior to his death.

20. Borkowski was denied any means of effective communication with the medical professionals prior to his death, and prior to his passing was scared and confused about his prognosis and how long he was expecting to be cared for at Life Care Center.

21. Borkowski was robbed of the simple dignity of knowing that he was gravely ill and the ability to ask questions and seek spiritual guidance prior to his passing.

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701 et seq.

22. Borkowski incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

23. Borkowski was profoundly Deaf and his disability substantially limited one or more of his major life activities, including his ability to effectively communicate with others who are not fluent in ASL.

24. Borkowski is therefore considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended.

25. Life Care Center is a recipient of federal financial assistance by virtue of receipt of Medicare and Medicaid payments, as well as other financial assistance.

26. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to be otherwise discriminated against.

27. The doctors, nurses, and all other employees and staff of Life Care Center who interacted with Borkowski had actual knowledge of his disability, yet, Borkowski was consistently denied any form of effective communication.

28. Accordingly, Life Care Center discriminated against Borkowski in the equal use of its facilities, and as a result, Borkowski experienced mental anguish and humiliation in violation of his civil rights.

29. Life Care Center failed to provide services to Borkowski as it would have provided a similarly situated hearing patient.

30. Life Care Center's policies, practices, and procedures, particularly the actions and omissions described above, violated Borkowski's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

31. Life Care Center has discriminated against Borkowski by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are Deaf or hard of hearing in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

32. At all times material, the employees, staff, and agents of Life Care Center would have been able to communicate effectively with Borkowski if Life Care Center had provided qualified interpreter services.

33. Life Care Center staff knew that Borkowski would be harmed by their failure to provide an interpreter.

34. As a result of Life Care Center's actions, Borkowski has been damaged and experienced emotional suffering, pain, and anguish.

35. Life Care Center's actions were intentional, with reckless disregard, and with deliberate

indifference to the rights and needs of Borkowski.

## COUNT II
## SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT, 42 U.S.C. § 18116

36. Borkowski incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

37. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), was in full force and effect and applied to Life Care Center's conduct.

38. At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

39. At all times relevant to this action, Borkowski had substantial limitations to the major life activity of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and Section 1557, 42 U.S.C. § 18116.

40. At all times relevant to this action, Borkowski's primary language for communication was ASL and not English; and Borkowski had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

41. At all times relevant to this action, Life Care Center received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Life Care Center is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

42. Pursuant to Section 1557, "an individual shall not, on the grounds prohibited...under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

43. Life Care Center has discriminated against Borkowski solely on the basis of Borkowski's disability and his limited English proficiency denying him meaningful access to the services, programs, and benefits Life Care Center offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

44. Life Care Center discriminated against Borkowski by failing to ensure effective communication through the providing of qualified sign language interpreters.

45. As set out above, absent injunctive relief there is a clear risk that Life Care Center's actions will recur again with other Deaf patients and family members.

46. Borkowski is therefore entitled to seek and recover compensatory damages for the injuries and loss he sustained as a result of Life Care Center intentionally discriminatory conduct as alleged, pursuant to 42 U.S.C. § 18116(a).

47. Borkowski is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a) and/or common law.

**WHEREFORE,** Estate of Bruno Borkowski respectfully prays that this Court grant the following relief against Life Care Center, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Life Care Center practices, policies, and procedures have subjected Borkowski to discrimination in violation of Section 504 of the Rehabilitation Act and Section 1557 of the Patient Protection and Affordable Care Act, and permanently enjoin Life Care Center from any practice, policy, and/or procedure which denied Borkowski equal access to and benefit from Life Care Center's services, or which denied Borkowski effective communication with Life Care Center. This includes entering a permanent injunction ordering Life Care Center:

   a. To cease discrimination against and all other Deaf or hard of hearing patients;

b. To promulgate and comply with policies and procedures to ensure that Life Care Center and their staff do not discriminate against individuals who are Deaf or hard of hearing;

c. To promulgate and comply with procedures to ensure that Life Care Center will provide and pay for interpreter services when needed by individuals who are Deaf or hard of hearing in all services offered by Life Care Center;

d. To promulgate and comply with procedures to ensure that Life Care Center will notify individuals who are Deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that state that Life Care Center will provide ASL interpreters and/or other communication services that ensure effective communication with Deaf or hard of hearing persons;

e. Award compensatory damages to Borkowski;

f. Award reasonable costs and attorneys' fees; and

      g. Award any and all other relief that may be necessary and appropriate.

Respectfully Submitted,

| | |
|---|---|
| /s/ *Sean H. Sobel* | /s/ *Andrew November* |
| Sean H. Sobel (0086905) | Andrew November (0085018) |
| Sobel, Wade & Mapley, LLC | Rebecca Cervenak (0098579) |
| 55 Erieview Plaza, Suite 370 | Liner Legal, LLC |
| Cleveland, Ohio 44114 | 4269 Pearl Road, Suite 104 |
| T: (216) 223-7213 | Cleveland, Ohio 44109 |
| F: (216) 223-7213 | T: (216) 282-1773 |
| sobel@swmlawfirm.com | F: (216) 920-9996 |
| | anovember@linerlegal.com |
| | rcervenak@linerlegal.com |

*Counsel for Plaintiff Estate
of Bruno Borkowski*

## **JURY DEMAND**

    Plaintiff Estate of Bruno Borkowski demands a trial by jury by the maximum number of jurors permitted.

                                                                 /s/ *Sean H. Sobel*
                                                                 Sean H. Sobel (0086905)

                                                                 *Counsel for Plaintiff Estate of Bruno Borkowski*